UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOUIS ALEXANDER WINGARD,

               Petitioner,

v.                                      Case No. 3:21-cv-361-BJD-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
and FLORIDA ATTORNEY GENERAL,

               Respondents.

_____

## ORDER

### I. STATUS

      Petitioner, Louis Alexander Wingard (Wingard), an inmate of the Florida penal system, initiated this action by filing a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1; Petition) in the United States District Court for the Northern District of Florida.  The Petition was subsequently transferred to this Court, because the underlying state court conviction is from Duval County, Florida.  Docs. 1, 4.  The Petition raises nine grounds for relief.  Doc. 1.  Respondents filed a Response to the

Petition (Doc. 18; Response),[1] and Petitioner filed a Reply to the Response (Doc. 23; Reply).[2]  Upon review, no evidentiary proceedings are warranted in this Court.[3]

## II. STANDARD OF REVIEW

## A. Standard Under AEDPA

---

[1] The Court refers to the exhibits attached to the Response as "Resp. Ex.," and uses the pagination of CM/ECF.

[2] In the Reply, after addressing Respondents' arguments, Wingard states:

> Petitioner will stand on the arguments presented in his habeas petition. Petitioner's legal documents were misplaced and/or lost by institutional staff.  Petitioner has up to page 32 of document 18, (Response to Petition for Writ of Habeas Corpus), which consist[s] of 62 pages.  For that reason, Petitioner incorporates all the arguments as raised in his relevant pleading filed in his case, (Exhibit A-CC of Respondents response).

Doc. 23 at 23.  Previously, Wingard filed two motions for extension of time to file the Reply, arguing that due to his transfer, he was missing his legal papers.  Docs. 19, 21.  Considering that Wingard did not seek any further extensions of time and was able to file his 24-page Reply addressing Respondents' arguments, the Court is satisfied that this matter is ripe for review.

[3] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corrs.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011)).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*  The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).  Thus, an evidentiary hearing will not be conducted.

2

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" *Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corrs.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1), (2).   A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence."   *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt."   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair[-]minded jurists could disagree on the correctness of the state court's decision."   *Harrington*, 562 U.S. at 101 (internal quotation marks omitted).   "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."   *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).   The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error.   *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253–54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To do so, he must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust their claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), thereby alerting the appropriate state court of "the federal nature of the claim[s]," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). *See also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process.").

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. Under the doctrine of procedural default:

> [A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 747–748 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal

review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g.*, *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once cause is established, "the petitioner also must show actual prejudice from the alleged constitutional violation." *Id.* (citing *Sykes*, 433 U.S. at 84). "[I]n order to show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (*per curiam*)).

In the absence of a showing of cause and prejudice, a petitioner may still receive consideration on the merits of a procedurally defaulted claim if he can show that a fundamental miscarriage of justice would occur. As explained by the Eleventh Circuit:

> "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (*per curiam*) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a

person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 687. As explained in *Richter*:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Richter*, 562 U.S. at 104 (internal citations modified).

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).   As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."   466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted).  If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105.  As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corrs.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689).   "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't*

*of Corrs.*, 703 F.3d 1316, 1333–35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. PERTINENT FACTS AND PROCEDURAL HISTORY

On November 18, 2011, Wingard was charged by Information with home invasion robbery with firearm or deadly weapon in violation of section 812.135, Florida Statutes, based on events that occurred on August 30, 2011. Resp. Ex. A at 40. On January 27, 2012, through counsel, he moved to dismiss the Information pursuant to Rule 3.140(g), Florida Rules of Criminal Procedure, arguing that the Information was not supported by testimony under oath from a material witness. Resp. Ex. A at 45–46. After a hearing on January 31, 2012, the trial court denied the motion to dismiss for the reasons stated on the record. Resp. Ex. A at 50; Resp. Ex. C at 68–86.

On March 12, 2012, through new counsel, Wingard again moved to dismiss the Information pursuant to Rule 3.140(g), arguing that the minor witness's interview used by the State to support the Information did not rise to testimony under oath from a material witness. Resp. Ex. A at 56–57. After a hearing held on March 15, 2012, the trial court denied the second motion to dismiss for the reasons stated on the record. Resp. Ex. A at 87–96; Resp. Ex. C at 87–108.

On March 29, 2012, an Amended Information was filed, charging Wingard with home invasion robbery with firearm or deadly weapon and possession of a firearm by a convicted felon in violation of sections 812.135 and 775.087(2)(a)(1), Florida Statutes. Resp. Ex. A at 59. On August 21, 2012, Wingard's counsel moved to dismiss the Amended Information, pursuant to section 907.045, Florida Statutes, and Rule 3.190(b), Florida Rules of Criminal Procedure, for lack of subject matter jurisdiction based on the prosecutor's failure to comply with Rule 3.140(g). Resp. Ex. A at 76–78. Wingard's counsel argued that the State could not rely on the minor witness's interview or on the confession of co-defendant Alyssa Beck, which was "presumptively unreliable," to support the Amended Information. *Id.* at 77. On September 10, 2012, the State moved to strike Wingard's third motion to dismiss, arguing that at a minimum, the filing of the Amended Information cured Wingard's repeated arguments for dismissal. *Id.* at 79–80. After a hearing on September 14, 2012, the trial court denied Wingard's third motion to dismiss for the reasons stated on the record, including the sworn statements by the co-defendant and by the child victim to the Child Protection Team (CPT). Resp. Ex. A at 81; Resp. Ex. C at 109–42. Between January 8, 2013 and January 18, 2013, the State amended the Information three times, concluding with the Fourth Amended Information that charged Wingard with home invasion robbery with firearm

11

or deadly weapon in violation of sections 812.135 and 775.087(2)(a)(1), Florida Statutes, and with possession of a firearm by a convicted felon in violation of sections 790.23(1)(a) and 775.087(2)(a)(1), Florida Statutes.  Resp. Ex. A at 110, 112, 115.

A jury trial was held from February 5, 2013 to February 8, 2013.  *See* Resp. Ex. C at 178–202; Resp. Ex. F at 29–202; Resp. Ex. G at 7–202; Resp. Ex. H at 3–110; Resp. Ex. I at 5–186.  On the first day of trial, Wingard's counsel renewed the motion to dismiss as to the Fourth Amended Information, which was summarily denied.  Resp. Ex. F at 42.  On February 8, 2013, the jury returned a guilty verdict against Wingard on both counts as charged.  Resp. Ex. A at 170–73; Resp. Ex. C at 185, 197.

On February 15, 2013, Wingard's counsel filed a motion for new trial. Resp. Ex. A at 206–07; Resp. Ex. D at 8–20.  Wingard, *pro se*, filed an amended motion for new trial on March 22, 2013.  Resp. Ex. B at 6–9.  The same day, the trial court held a hearing and denied both motions.  Resp. Ex. A at 222; Resp. Ex. B at 5 (stating that the denial of the amended motion for new trial was without prejudice to Wingard raising any grounds for ineffective assistance of counsel in a motion filed under Rule 3.850, Florida Rules of Criminal Procedure); Resp. Ex. D at 8–20, 35–36.  At the same hearing, Wingard was adjudicated guilty on both counts and sentenced as a Prison

Release Reoffender (PRR) to a term of life imprisonment on Count One to run concurrent with the 15-year term of imprisonment on Count Two.  Resp. Ex. B at 10, 13–17, 46; Resp. Ex. D at 4–45.  On the same day, Wingard's counsel filed a notice of appeal to the First District Court of Appeal of Florida (First DCA).  Resp. Ex. B at 24–25.  Wingard's counsel filed an Initial Brief on June 12, 2013.  Resp. Ex. J.  The State filed its Answer Brief on October 22, 2013.  Resp. Ex. K.  On January 24, 2014, the First DCA *per curiam* affirmed the trial court's decision without a written opinion.  Resp. Ex. L at 2.  The mandate was issued on February 11, 2014 in *Wingard v. State*, 130 So. 3d 232 (Fla. 1st DCA 2014) (table).  Resp. Ex. L at 3.

On March 4, 2014, Wingard, *pro se*, sought state habeas relief in the First DCA, alleging ineffective assistance of appellate counsel.  Resp. Ex. M.  On March 26, 2014, the First DCA *per curiam* denied the petition on the merits, but without an explanation in *Wingard v. State*, 138 So. 3d 480 (Mem) (Fla. 1st DCA 2014).  Resp. Ex. N at 2.  On April 4, 2014, Wingard, *pro se*, moved for rehearing, which was denied without discussion on May 8, 2014.  Resp. Ex. O.  On June 11, 2014, Wingard, *pro se*, filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court to review the First DCA's May 8, 2014 decision.  Resp. Ex. P at 2–3.  On June 19, 2014, the Florida Supreme Court dismissed the case for lack of jurisdiction.  *Id.* at 4–5.

13

Wingard, *pro se*, filed his first motion for post-conviction relief under Rule 3.850 in the trial court on May 12, 2014, his amended motion on June 22, 2015, and his second amended motion on July 23, 2015.  Resp. Ex. Q1 at 6–47, 53–84, 85–118.   On November 24, 2015, the trial court entered an order striking these motions and directing Wingard to file one comprehensive motion for post-conviction relief not exceeding fifty pages.  *Id.* at 119–22.

On January 19, 2016, Wingard, *pro se*, filed an Amended Motion for Post-Conviction Relief pursuant to Rule 3.850, raising twenty-nine (29) grounds for relief.  *Id.* at 123–97.  On March 2, 2017, the post-conviction court found ground twenty-two (22) to be facially insufficient and granted leave to amend this ground only.  *Id.* at 198–200.  On April 28, 2017, Wingard, *pro se*, filed an Amendment to Ground Twenty-Two.  *Id.* at 206–15.  On June 13, 2017 (mailbox rule), he filed a motion for leave to clarify grounds one (1) and twenty (20) of his Amended Motion for Post-Conviction Relief, which was granted on February 9, 2018.  *Id.* at 216–17, 237–38.  Wingard, *pro se*, filed a Clarification of Grounds One and Twenty on July 6, 2017 (mailbox rule).  *Id.* at 219–24.  On April 13, 2018, the post-conviction court granted leave to amend grounds thirteen (13), twenty-three (23), and twenty-seven (27) of the Amended Motion for Post-Conviction Relief.  *Id.* at 239–42.  On June 6, 2018 (mailbox rule), Wingard, *pro se*, filed an Amendment to Grounds Thirteen, Twenty-Three, and

14

Twenty-Seven. *Id.* at 243–51. On June 28, 2018, the post-conviction court denied Wingard's January 19, 2016 Amended Motion for Post-Conviction Relief, his April 28, 2017 Amendment to Ground Twenty-Two, his July 6, 2017 Clarification of Grounds One and Twenty, and his June 6, 2018 Amendment to Grounds Thirteen, Twenty-Three, and Twenty-Seven. *Id.* at 282–311.

On July 24, 2018, Wingard, *pro se*, filed a notice of appeal of the post-conviction court's June 28, 2018 decision to the First DCA. Resp. Ex. Q3 at 374–75. On March 12, 2019 (mailbox rule), Wingard, *pro se*, filed his Initial Brief and supporting documentation. Resp. Ex. S at 2–77. On March 28, 2019, the State filed a notice that it would not file an answer brief pursuant to Florida Rule of Appellate Procedure 9.141(b). Resp. Ex. T at 2–3. On November 25, 2019, the First DCA *per curiam* affirmed the post-conviction court's decision without a written opinion. Resp. Ex. U at 2–3. On December 20, 2019 (mailbox rule), Wingard moved for rehearing, which was denied on January 23, 2020. Resp. Ex. V at 2–12. The mandate was issued on February 13, 2020 in *Wingard v. State*, 288 So. 3d 1190 (Fla. 1st DCA 2019) (table). Resp. Ex. U at 4.

On March 23, 2020 (mailbox rule), Wingard, *pro se*, filed a petition for habeas corpus in the First DCA, which was styled as "Memorandum of Law and Facts in Support of the Motion for Special Review/Judicial Review." Resp.

Ex. V at 13–16.  On June 29, 2020 (mailbox rule), Wingard, *pro se*, filed an amended petition for writ of habeas corpus.  *Id.* at 17–21.  On September 15, 2020, the First DCA *per curiam* dismissed the amended petition for writ of habeas corpus as unauthorized, citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (*per curiam*), in *Wingard v. State*, 311 So. 3d 979 (Mem) (Fla. 1st DCA 2020).  Resp. Ex. V at 22–23.  Wingard did not seek rehearing.

During the pendency of the state habeas proceedings in the First DCA, on June 10, 2020 (mailbox rule), Wingard, *pro se*, filed a motion in the trial court to correct his illegal sentence pursuant to Rule 3.800, Florida Rules of Criminal Procedure, as to Count Two, arguing that possession of a firearm by a convicted felon was not a qualifying offense for a PRR designation under section 775.082(9)(a), Florida Statutes.  Resp. Ex. Z at 2–7.  On July 29, 2020, the State filed a response, conceding that Count Two did not qualify for PRR designation.  Resp. Ex. AA at 2–3.  On August 24, 2020, the trial court granted Wingard's motion to correct illegal sentence and directed his judgment and sentence be amended to reflect that the PRR enhancement applied only to Count One.  Resp. Ex. BB at 2–4.  Wingard's judgment and sentence were corrected on August 26, 2020 *nunc pro tunc* to March 22, 2013, to reflect that the PRR enhancement applied only to Count One.  Resp. Ex. CC at 2–9.

# IV. ANALYSIS

Wingard raises nine grounds for relief.  Doc. 1.  Grounds One and Five have the same basis and will be addressed first.

## **Grounds One and Five**

In Ground One, Wingard states as follows:

Whether the Trial Court erred in permitting the State to introduce on rebuttal a very suggestive photo and web page.

Supporting facts:
The introduction of the above mentioned exhibits against Wingard suggested a[n] inappropriate basis for the jury to make it[s] decision and was highly unfair and very prejudicial to Wingard['s] Due Process Rights to a "Fair Trial" as well [as] to his Sixth Amendment Constitutional Right to "Effective Assistance of Counsel."  This lower court denial is contrary to Federal and State law[;] thus, Wingard request[s] this Honorable Court review . . . all claims raised within this Petition.

*Id.* at 5.

In Ground Five, he states as follows:

In Wingard['s] issue one of his Direct appeal[,] Wingard contends the Trial Court erred in permitting the state counsel to offer in rebuttal exhibits of very suggestive and even offensive material as evidence.

Supporting Fact:
In the instant case[,] the introduction of the above mentioned exhibits against Wingard suggested a[n] inappropriate basis for the jury to make its decision and was highly unfair and very prejudicial to Wingard['s] Due Process Rights to a Fair Trial as well as to his Sixth Amendment Constitutional Right to Effective Assistance of Counsel.

17

*Id.* at 24.

Wingard raised a similar claim as Issue I in his direct appeal Initial Brief filed on June 12, 2013:

> Whether the trial court erred in permitting the State to introduce on rebuttal a very suggestive photograph and web page of a woman standing in front of a Lincoln Navigator and the accompanying web ad, over defense 90.403 objection[.]

Resp. Ex. J at 16 (all caps omitted).[4]   The First DCA *per curiam* affirmed without a written opinion.  Resp. Ex. L.

In presenting this issue to the First DCA, Wingard did not allege that the trial court's error violated any of his rights under the United States Constitution, and, instead, relied solely on state law.  *See* Resp. Ex. J at 16–18.  However, "in order to exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief."  *Henry v. Dep't of Corrs.*, 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting *Gray v. Netherland*, 518 U.S. 152, 163 (1996)).  "If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."  *Duncan v. Henry*, 513 U.S. 364,

---

[4] This issue was preserved by defense counsel's contemporaneous objection at the trial.  *See* Resp. Ex. I at 11–12, 17.

366 (1995) (*per curiam*).  As Wingard made no argument or reference to the United States Constitution or any decision by the United States Supreme Court, he did not alert the state court of the federal nature of his claims, thereby depriving the state court of a meaningful opportunity to review them. *See Baldwin*, 541 U.S. at 29.  Since future attempts to exhaust the claims would be futile, the claims in Grounds One and Five are procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (*per curiam*). Further, Wingard has demonstrated neither cause and prejudice nor a miscarriage of justice to overcome the procedural default.[5]  Thus, Wingard is not entitled to federal habeas relief on Grounds One and Five.

### **Ground Two**

As Ground Two, Wingard states:

Whether the Trial Court erred in denying the defense motion to offer surrebuttal testimony.

Supporting facts:
Wingard was given a fair opportunity to inform the lower court at the time that he did not know the alleged woman (Katora) by the

---

[5] To the extent Wingard attempts to raise new claims in his Reply, such claims are not properly before the Court. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (*per curiam*) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

> name provided at the time.  Moreover, the inflammatory evidence
> may have swayed Wingard['s] jury to convict him.  This was not a
> situation where Wingard sought to repeat what he said in his
> testimony, but one [in] which he wanted to respond to something
> new and highly prejudicial that was brought out by the State
> opening the door for Wingard to attack it by moving as he did when
> he requested for [sic] surrebuttal.

Doc. 1 at 7.

This claim was presented as Issue II in Wingard's direct appeal Initial

Brief, filed on June 12, 2013:

> Whether the trial court erred in denying the defense motion to
> offer surrebuttal testimony[.]

Resp. Ex. J at 19 (all caps omitted).[6]  The First DCA *per curiam* affirmed

without a written opinion.  Resp. Ex. L.

This claim was also presented as ground twenty-eight of Wingard's

Amended Motion for Post-Conviction Relief.  Resp. Ex. Q1 at 145–46.  The trial

court denied relief, noting that the issue had been raised and affirmed on direct

appeal.  *Id.* at 309.  Wingard appealed, but did not raise this particular issue

in his Initial Brief filed in the First DCA on March 12, 2019.  Resp. Ex. S at 2–

49.

By failing to include this claim in his optional Initial Brief filed on March

12, 2019, Wingard abandoned this claim on appeal.  *See Sutherland v. State*,

---

[6] The issue was properly preserved at the trial.  *See* Resp. Ex. I at 37.

305 So. 3d 776, 779 (Fla. 1st DCA 2020) (finding that claims not addressed in an appellant's brief after a summary denial of a post-conviction motion were abandoned); *Watson v. State*, 975 So. 2d 572, 573 & n.1 (Fla. 1st DCA 2008) (*per curiam*) (stating that "when a defendant submits a brief in an appeal from a summary denial of a postconviction motion, this Court may review only those arguments raised and fully addressed in the brief," but "if a defendant does not file a brief when appealing the denial of his postconviction motion, this Court is still required to investigate all possible means of relief"); *see also Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (*en banc*) (*per curiam*) (finding issues not raised in an appellant's brief were abandoned, and, thus, receding from *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000) to the extent it conflicted with *Austin v. State*, 968 So. 2d 1049 (Fla. 5th DCA 2007), on this point). Because Wingard cannot return to the First DCA to exhaust this claim, it is procedurally defaulted. *See, e.g.*, *Babichev v. Sec'y, Fla. Dep't of Corrs.*, No. 3:19-cv-792-BJD-MCR, 2021 WL 6135192, *9–10 & n.7 (M.D. Fla. Dec. 29, 2021) (finding claims not fully briefed on appeal after a summary denial of a post-conviction motion to have been abandoned and concluding that those claims were unexhausted and procedurally defaulted).

Additionally, to the extent Wingard presented this claim in his Initial Brief filed on June 12, 2013 and in the post-conviction court, he did not allege

that the trial court's error violated any of his rights under the United States Constitution, and, instead, relied solely on state law. *See* Resp. Ex. J at 19–20; Resp. Ex. Q1 at 145–46. As Wingard made no argument or reference to the United States Constitution or any decision by the United States Supreme Court, he did not alert the state court of the federal nature of his claim, thereby depriving the state court of a meaningful opportunity to review the claim. *See Baldwin*, 541 U.S. at 29. Since future attempts to exhaust this claim would be futile, the claim in Ground Two is procedurally defaulted. *Bailey*, 172 F.3d at 1303.

Further, Wingard did not exhaust this claim in his amended petition for writ of habeas corpus, filed in the First DCA on June 29, 2020, where he presented a similar issue as legal argument two. *See* Resp. Ex. V at 20–21 ("The Court [v]iolated the Petitioner's 4th Amendment Rights by not allowing the Petitioner an opportunity to argue rebuttal. . . . The lower court denied the Petitioner[']s or[e] t[e]nus motion for surrebuttal after the court allowed the state to reopen its case with so called new evidence . . . ."). The First DCA *per curiam* dismissed the amended petition for writ of habeas corpus as

unauthorized, citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (*per curiam*).[7]
Resp. Ex. V at 22–23.  Wingard did not seek rehearing.

Because the First DCA relied on an independent and adequate state
procedural ground for the dismissal of Wingard's amended petition for writ of
habeas corpus, he did not exhaust his claim and it is procedurally defaulted.
*See Coleman*, 501 U.S. at 734–35 & n.1 (stating that federal habeas courts will
consider a claim to be procedurally defaulted if it was presented in state court
and rejected on the independent and adequate state ground of procedural bar
or default); *Cargile v. Sec'y, Dep't of Corrs.*, 349 F. App'x 505, 507–08 (11th Cir.
2009) (*per curiam*) (stating that claims raised in state habeas petitions that
were dismissed under *Baker* as unauthorized were procedurally defaulted from
federal habeas review); *see also Harvey v. Dixon*, No. 4:24cv3-MW-HTC, 2024
WL 3432018, at *4 (N.D. Fla. July 11, 2024) ("Harvey also did not exhaust

---

[7] In *Baker*, the Florida Supreme Court held that "[t]he remedy of habeas corpus
is not available in Florida to obtain the kind of collateral postconviction relief
available by motion in the sentencing court pursuant to rule 3.850."  878 So. 2d at
1245.  The court explained that it would start dismissing "as unauthorized, habeas
corpus petitions filed by noncapital defendants that seek the kind of collateral
postconviction relief available through a motion filed in the sentencing court, and
which (1) would be untimely if considered as a motion for postconviction relief under
rule 3.850, (2) raise claims that could have been raised at trial or, if properly
preserved, on direct appeal of the judgment and sentence, or (3) would be considered
a second or successive motion under rule 3.850 that either fails to allege new or
different grounds for relief, or alleges new or different grounds for relief that were
known or should have been known at the time the first motion was filed."  *Id.* at 1245–
46.

these grounds for relief in his state Petition for Writ of Habeas Corpus because the First DCA summarily dismissed Harvey's claims on an adequate and independent state procedural ground – namely, that the claims should have been raised on direct appeal or a 3.850 motion [pursuant to *Baker*].”), *report and recommendation adopted*, 2024 WL 3432019 (N.D. Fla. July 15, 2024). Importantly, Wingard has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the procedural default.  Accordingly, Wingard is not entitled to federal habeas relief on Ground Two.

### Ground Three

In Ground Three, Wingard states:

The Trial Court erred [in] denying Wingard's Motion to Dismiss [the] Charging Information.

Supporting facts:
Here, Wingard brought to the lower court's attention that the state attorney filed an Information that lack[s] Subject Matter Jurisdiction.  [U]pon researching this case[,] Wingard noticed that the state counsel violated Fla. R. Crim. P. 3.140(g), [and] the reason why is [because] the state attorney misrepresented the facts by alleging that “Material Witnesses” had come forward [which] given [sic] them power to submit the case to the Judge whom [sic] believed Material Witnesses had been secured even though they were not, this is a “Manifest Constitutional Error.”

Doc. 1 at 8.

Wingard presented a similar claim as ground one in his Amended Motion for Post-Conviction Relief.  Resp. Ex. Q1 at 124–27 (alleging that the trial court's error, *inter alia*, violated his Fifth and Fourteenth Amendment rights), 220–21 (presenting this claim as ineffective assistance of counsel claim in Wingard's clarification of ground one and stating that his Sixth and Fourteenth Amendment rights were violated). The post-conviction court summarily denied the claim as follows:

> In Ground One, Defendant alleges the trial court erred by denying his motion to dismiss the Information for lack of subject matter jurisdiction.  Specifically, Defendant asserts the State did not have sworn testimony from a material witness to support the Information and erred when it considered immaterial witness testimony.  Defendant claims the judgment is void as a result of the defective Information.
>
> Defendant's claim is without merit.  *See Collins v. State*, 97 So. 3d 305, 306 (Fla. 4th DCA 2012) ("We have seen numerous post-conviction motions filed by prisoners arguing this same frivolous issue which attempts to challenge the conviction based on allegations that the state attorney failed to receive sworn testimony from material witnesses before filing the information."). Further, Defendant raised this issue before trial, and this Court repeatedly denied his motion to dismiss. (Ex. D; J.) Defendant did not raise this issue in his direct appeal. (Ex. E)  Accordingly, he is not entitled to relief on Ground One.[FN1: This Court also notes that the State filed an amended Information after Defendant objected. (Ex. H.)  This mooted Defendant's claims.  *See Williams v. State*, 182 So. 3d 11, 15–16 (Fla. 3d DCA 2015).]  *See State v. McBride*, 848 So. 2d 287, 290–91 (Fla. 2003).

Resp. Ex. Q1 at 283.  Wingard appealed, and the First DCA *per curiam* affirmed without a written opinion.  Resp. Ex. S at 10–21; Resp. Ex. U.

25

Despite Wingard's assertion of violation of his Fifth and Fourteenth Amendment rights, this claim is entirely one of state law and thus not cognizable for federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (*per curiam*) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which are merely 'couched in terms of equal protection and due process.'" (citation omitted)); *see also Paul v. Sec'y, Fla. Dep't of Corrs.*, No. 3:18-cv-1032-MMH-PDB, 2021 WL 2109114, *7 (M.D. Fla. May 25, 2021) ("This oath and verification requirement [of Rule 3.140(g), Fla. R. Crim. P.] is a creature of state law and not found in the United States Constitution. As such, whether the charging documents comply with this state procedural rule is a matter of state law only, and, thus, not cognizable in federal habeas proceedings."); *Phillips v. Sec'y, Fla. Dep't of Corrs.*, No. 3:15-cv-602-J-32JBT, 2018 WL 3974109, *6 (M.D. Fla. Aug. 20 2018) ("The requirement an information be supported by a sworn statement of a material witness is a matter governed by Florida procedural rules and statutes. Thus, [petitioner's] allegations that the circuit court violated state law is not proper for the Court's consideration." (citations omitted)).

Further, to the extent Wingard argues that the state court lacked subject matter jurisdiction because of the alleged infirmity in the Information, his claim is without merit.  As explained by the Eleventh Circuit:

> "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (citation and quotations omitted).  "In determining whether an indictment is sufficient, we read it as a whole and give it a 'common sense construction.'" *Id.* (citing *United States v. Gold*, 743 F.2d 800, 813 (11th Cir. 1984) and *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976)).[footnote omitted]  "In other words, the indictment's 'validity is to be determined by practical, not technical, considerations.'" *Jordan*, 582 F.3d at 1245 (citing *Gold*, 743 F.2d at 812).

*United States v. Schmitz*, 634 F.3d 1247, 1259–60 (11th Cir. 2011) (footnote omitted).  Under this standard, the Information against Wingard was legally sufficient to give the state court jurisdiction.  Therefore, Ground Three must be denied.

### **Ground Four**

In Ground Four, Wingard states as follows:

Wingard was unlawfully delivered to state custody pursuant to Fla. Stat. §§ 941.07, 941.10.

Supporting Facts:
The Governor of the State of Florida at the time of this case never issued any type of warrant to arrest Wingard and thereafter

extradict [sic] him to face charge[s] in any other state court, "lower" or "higher."

This Prerogative under Interstate Cooperation is the Governor['s] duty[;] here[,] there is no evidence nor documents within the record showing the complete process [that] took place to give the lower state court jurisdiction to take such action against Wingard[,] thereby depriving Wingard [of] Equal Opportunity of the law and Due Process of Law.

Wingard avers that the Trial Court lacked [j]urisdiction in the instant case because the State Attorney['s] Office failed to properly invoke the [j]urisdiction by not filing the proper pleadings needed to allow the court to act thereto.

The [I]nformation was issued without securing sworn witness testimony through a Federal Grand Jury nor [a] State Grand Jury.

The lower [c]ourt['s] rulings are [c]ontrary to Federal and State law[.]

Doc. 1 at 23.

Wingard presented a similar claim as ground two in his Amended Motion for Post-Conviction Relief. Resp. Ex. Q1 at 127–28. The post-conviction court summarily denied the claim as follows:

In Ground Two, Defendant asserts his extradition into state custody from federal custody violated Federal law. Specifically, Defendant contends the Florida Governor never issued an order allowing Defendant's arrest and extradition. Thus, Defendant avers this Court never had jurisdiction over Defendant.

Defendant cites both Sections 941.07 and 941.10, Florida Statutes, in support of his argument that his extradition was illegal and deprived this Court of jurisdiction. However, both statutes detail how the Governor of Florida shall respond when an out-of-state authority makes an extradition request. Section 941.07 mandates

28

that the governor shall sign an arrest warrant and direct its execution if he decides that an *out-of-state* request is valid. Section 941.10 prohibits extradition *from* Florida unless the accused is first brought before a judge and informed of his rights. Neither statute is applicable to Defendant's case, as he was transferred into the custody of the State of Florida.

Regardless, once a defendant has been returned to the demanding state, "it is too late to litigate an issue which could and should have been raised in . . . the asylum jurisdiction, prior to the return of the appellant; or which could have been brought to the attention of the trial court at the original adjudication." *Hunter v. State*, 174 So. 2d 415, 416–17 (Fla. 1965). Accordingly, Defendant is not entitled to relief on Ground Two. *Frisbie v. Collins*, 342 U.S. 519, 522–23 (1952).

Resp. Ex. Q1 at 283–84 (emphasis in original).

Wingard did not include this claim in his optional Initial Brief filed in the First DCA on March 12, 2019. *See* Resp. Ex. S at 2–49. Therefore, this claim was abandoned on appeal. *See Sutherland*, 305 So. 3d at 779; *Watson*, 975 So. 2d at 573 & n.1. Because Wingard cannot return to the First DCA to exhaust this claim, it is procedurally defaulted. *See Babichev*, 2021 WL 6135192, at *9–10 & n.7. Further, Wingard has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the default. Therefore, Ground Four is denied as procedurally barred.

**<u>Ground Six</u>**

In Ground Six, Wingard states:

> In Ground 23 of his pro se Fla. R. Crim. P. 3.850(a) [Motion,] [c]ounsel was ineffective for failing to call Sharon Wingard and Katora as . . . witness[es] to testify about his alibi.
>
> Supporting Facts:
> Wingard also incorporate[s] ground 26 to this ground sub claim "B" [sic] Sharon Wingard and Katora were alibi witnesses for the Petitioner.  Sharon['s] testimony would have placed the Petitioner at home at the time of the crime commission and Katora['s] testimony would have supported Sharon['s] observation.   The low[er] court simply denied it because he failed to advise the trial court she would be available to testify (Katora).

Doc. 1 at 25.

Wingard presented a similar claim as ground twenty-three in his Amended Motion for Post-Conviction Relief and in his amendment to ground twenty-three.  Resp. Ex. Q1 at 143–44, 245–46.  To the extent Wingard now incorporates ground twenty-six of his Amended Motion for Post-Conviction Relief into Ground Six of his Petition, ground twenty-six read as follows:

> Defendant was denied his Sixth Amendment right under the United States Constitution to effective assistance of counsel, because the cumulative errors counsel made during pre-trial and jury trial cannot be excluded as harmless error.
> The extreme amount of errors defense counsel [illegible] to the amount of fundamental error that was to [sic] great to overcome giving the jury no choice but to come back with a guilty verdict.

Resp. Ex. Q1 at 145.

The post-conviction court summarily denied grounds twenty-three and twenty-six as follows:

In Ground Twenty-Three, Defendant asserts counsel was ineffective for failing to call Defendant's alibi witness, Sharon Wingard. According to Defendant, Sharon Wingard would have testified Defendant was at home when the alleged crime took place and Defendant's son was missing with Defendant's phone prior to the crime being committed. Defendant states Sharon Wingard was available to testify and counsel knew about her. Defendant also alleges counsel should have called Katura as a witness. Defendant asserts Katura was available and would have testified that Defendant only knew her by the name "Desire" and that she spoke with Defendant's son on Defendant's cell phone prior to the alleged crime. According to Defendant, Katura would have also testified that she never picked up Defendant on the morning after the alleged crime.

After Defendant testified and counsel rested, this Court asked Defendant if he wanted counsel to call any other witnesses on his behalf. (Ex. F at 676.) Defendant replied, "No, sir." (Ex. F at 676.) Accordingly, Defendant is not entitled to relief on Ground Twenty-Three. *McIndoo v. State*, 98 So. 3d 640, 641–42 (Fla. 4th DCA 2012) ("Because his sworn motion indicates that he was aware of the witness and that witness's testimony prior to trial, the colloquy to the court conclusively refutes his claim that his attorney failed to call a known witness against the appellant's wishes.").

. . .

In Ground Twenty-Six, Defendant alleges the cumulative effect of counsel's errors amounted to ineffective assistance of counsel. This Court has reviewed Defendant's claims and determined that counsel was not ineffective. "Where the alleged errors urged for consideration in a cumulative error analysis are individually either procedurally barred or without merit, the claim of cumulative error also necessarily fails." *Hurst v. State*, 18 So. 3d 975, 1015 (Fla. 2009) (internal quotations and citations omitted). Accordingly, Defendant is not entitled to relief on Ground Twenty-Six.

Resp. Ex. Q1 at 307, 309.

Wingard did not include these claims in his optional Initial Brief filed in the First DCA on March 12, 2019.  *See* Resp. Ex. S at 2–49.  Therefore, these claims were abandoned on appeal.  *Sutherland*, 305 So. 3d at 779; *Watson*, 975 So. 2d at 573 & n.1.  Because Wingard cannot return to the First DCA to exhaust these claims, the claims are procedurally defaulted.  *See Babichev*, 2021 WL 6135192, at *9–10 & n.7.  Further, Wingard has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the default.  Therefore, Ground Six is denied as procedurally barred.

### Ground Seven

In Ground Seven, Wingard states as follows:

Sub Claim "A"
[In] Ground Three (3) of [his] Rule 3.850(a)[,] Fla. R. Crim. P.[,] motion[,] Wingard was denied his Sixth [A]mendment right under the United States Constitution by [c]ounsel['s] fail[ure] to exclude the non-material witness.

Supporting facts:
Here[,] the Petitioner bring[s] to this Honorable Court[']s attention [the] lower court[']s ruling that is contrary to federal and State law on the basis of a lack of Subject Matter Jurisdiction.

Wingard moved the lower [c]ourt to dismiss the [I]nformation under attack within this Petition because the lower court failed to properly apply the law when it comes to sworn testimony of a witness and what[']s [supposed] to be done.  In this case [sic]

"No Material Witness" was obtain[ed] and once Wingard advised Defense Counsel to object to the introduction of a witness (Beck)

> on behalf of the state whom [sic] the state alleged was a material witness whom [sic] would testify as to what was observed by them, beyond what was heard from others['] reflective thoughts. Counsel failed to exclu[de] the non-material witness once Defense Counsel became aware the witness was not. Wingard['s] counsel became ineffective by failing to object to the witness['s] statements and to use [them] as rel[e]vant evidence to articulate grounds for dismissal.

> A witness that testify [sic] about subject matters, events, is hearsay when it did not come from the alleged witness['s] personal observation of the altercation, and/or [s]ubject matter.

Doc. 1 at 26.

Wingard presented this claim as ground three in his Amended Motion for Post-Conviction Relief. Resp. Ex. Q1 at 128–29. The post-conviction court summarily denied relief as follows:

> In Ground Three, Defendant alleges counsel was ineffective for failing to object when the State argued that Alyssa Beck's testimony before a grand jury qualified her as a material witness. Specifically, Defendant alleges counsel was deficient because Beck testified in a federal case unrelated to Defendant's. Defendant claims prejudice because the State was allowed to prosecute without obtaining an information based upon the sworn testimony of a relevant material witness.

> A witness's grand jury testimony may be admitted as substantive evidence at trial. *Moore v. State*, 452 So. 2d 559, 562 (Fla. 1984). Thus, Beck's testimony before a federal grand jury constituted sworn testimony sufficient to establish probable cause for the Information. *Id.*

> Further, this Court did not deny Defendant's motion to dismiss solely based upon Beck's grand jury testimony:

33

[This Court]: I think on a number of grounds, I'm pretty comfortable denying the motion on legal basis.

[Number one,] Grand Jury testimony is clearly sworn, okay, and it was done with no basis to dispute that it did not occur before the filing of the information, all right.

Secondly, and a child witness, who -- I have not reviewed in camera the testimony, but I take representations from [defense counsel] and that it appeared that she knew the difference between truth and a lie and, therefore, that would also constitute a sworn statement.

And the third reason is I am reading -- it's not particularly elaborate in [sic] as far as it's [sic] explanation the [sic] *State v. Pendergrass*, but it does seem to say, you know what, the issue is moot now [sic] they took a writ of service or something like that.

And they -- you know, it says it's moot because you filed an amended information after you obtained new sworn statements.

And so f[o]r all those reasons it appears to me that the motion should be denied at this point.

(Ex. D at 13–14.)[8]

Finally, there is no reasonable possibility that the ultimate outcome of the proceedings would have been different had counsel objected. *See Williams v. State*, 182 So. 3d 11, 16 (Fla. 3d DCA 2015). As counsel conceded at the hearing, the State would have been able to refile the charges had this Court granted Defendant's motion.[FN2: As this Court previously noted, the State did ultimately file an amended Information. (Ex. H.)] *See State v. Pendergrass*, 997 So. 2d 518, 518 (Fla. 1st DCA 2008). Further, based upon Beck's trial testimony, she was a material witness. (Ex. F at 257–63.) Accordingly, Defendant is not entitled to relief on Ground Three.

---

[8] This internal block quote is in Resp. Ex. C at 80–81.

Resp. Ex. Q1 at 284–85.

Wingard then presented this claim as Issue II in his Initial Brief filed on March 12, 2019.  Resp. Ex. S at 21–29.  The First DCA *per curiam* affirmed without a written opinion.  Resp. Ex. U.  Because the First DCA affirmed without a written opinion, the Court presumes the affirmance was based on the post-conviction court's findings.  *See Wilson*, 584 U.S. at 125–26 (holding that where the relevant state court decision on the merits does not provide any rationale for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "should then presume that the unexplained decision adopted the same reasoning").

As the post-conviction court decided this claim on the merits, the Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications.  Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.  As discussed earlier, the issue of whether the State complied with Rule 3.140(g), Florida Rules of Criminal Procedure, as far as receiving

35

testimony under oath from material witnesses to support the charging document, is a matter of state law. This Court "must defer to the state's construction of its own law" when the validity of the claim that counsel failed to raise turns on state law. *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (2017) (internal quotation marks and citation omitted).

Here, the post-conviction court found Beck was a material witness who gave sworn testimony sufficient to establish probable cause for the Information, but even assuming this finding was an error, the trial court noted that it denied Wingard's motions to dismiss for additional reasons. Resp. Ex. Q1 at 284–85. Moreover, as the post-conviction court noted, Wingard could not establish prejudice as a result of counsel's failure to object to Beck's testimony, because there was no reasonable possibility the outcome of the proceedings would have been different, considering that the State would have been able to refile the charges, which the State actually did. *Id.*; *see also* Resp. Ex. C at 116–18 (noting that at the September 14, 2012 hearing on Wingard's motion to dismiss, his counsel conceded there was caselaw allowing the State to cure defects in a charging document by filing an amended information). Wingard has not shown that trial counsel was deficient for failing to object to Beck's testimony or that he was prejudiced as a result of any deficient performance under *Strickland*. *See Diaz v. Sec'y for Dep't of Corrs.*, 402 F.3d 1136, 1142

(11th Cir. 2005) (holding that counsel was not ineffective for failure to raise a meritless argument).  Thus, Wingard is not entitled to federal habeas relief on Ground Seven.

### **Ground Eight**

In Ground Eight, Wingard states:

Sub Claim "B"
Wingard contend[s] that the Trial Court has [d]eprived him of his Constitutional Right to Effective Assistance of Trial Counsel and Due Process of law a [sic] (Fair Trial).

Supporting Facts:
The content alle[ged] to have been rel[e]vant to the [j]ury determination of the [g]uilt or [i]nnocence of Wingard was admitted over an objection of the [d]efense.

The Trial Court admitted phone records alle[ged] to show a connection to witness "Katora" [alleged] to have been a girlfriend of Wingard[,] however, [they] should not have been admitted as a summary exception to the [d]efense objection to hearsay, simply because a number of a person alle[ged] to have been a girlfriend of another person does not by itself make it the truth of the matter asserted.

Moreover, Wingard contend[s] the actions [taken] by the Trial Court deprived him of effective assistance of counsel by overruling the court appointed counsel['s] objection in front of his [j]ury, [which] may have lead [sic] the [j]ury to convict him on that evidence to corroborate other alle[ged] evidence by the state.  The phone records were clearly irrelevant of the court's main issue here, which is "whether" or "not" Wingard committed the convicted crimes[.]

The Trial Court['s] determination is contrary to State and Federal law.  6th, 14th Const. Amend.

Doc. 1 at 27.

Wingard presented a somewhat similar claim as ground sixteen in his Amended Motion for Post-Conviction Relief. Resp. Ex. Q1 at 139–40. The post-conviction court summarily denied relief as follows:

> In Ground Sixteen, Defendant alleges counsel was ineffective because she was unprepared. Specifically, Defendant complains counsel was deficient because she provided no defense when the State introduced Defendant's phone records into evidence. Defendant claims prejudice because he was entitled to a mistrial.
>
> During Steven Venable's testimony, the State attempted to introduce Defendant's phone records into evidence. (Ex. F at 508–09.) Counsel objected on hearsay grounds and, after approaching the bench, informed this Court that she did not have the records the State was entering into evidence. (Ex. F at 509.) She did not argue that the State had failed to provide the records, just that there had been some kind of error when she inherited the case from previous counsel. (Ex. F at 509.) In response, the State suggested counsel be given time to review the records and, if necessary, that she be able to question the witness before the State continued its direct examination. (Ex. F at 510.) Counsel, alongside Defendant, then spent twenty to thirty minutes reviewing the records and questioning the witness. (Ex. F at 512–13.)
>
> Defendant has failed to show prejudice because nothing in the record indicates that counsel's trial preparation or strategy would have been different had counsel obtained the records before trial. *See Lasiak v. State*, 966 So. 2d 983, 984 (Fla. 5th DCA 2007). The records merely detailed subscriber information for a cellular phone listed in Defendant's name. (Ex. F at 518–19.) Counsel knew the State would be using Defendant's phone records against him. (Ex. F at 515–16.) Further, counsel had time to review these records and depose this witness, and nothing in the record suggests a reasonable possibility that the ultimate outcome of Defendant's trial would have been different had counsel reviewed these records

38

and deposed this witness prior to trial.  Accordingly, Defendant is not entitled to relief on Ground Sixteen.

Resp. Ex. Q1 at 298–99.

Wingard did not include this claim in his optional Initial Brief filed on March 12, 2019.  *See* Resp. Ex. S at 2–49.  Therefore, the claim was abandoned on appeal.  *Sutherland*, 305 So. 3d at 779; *Watson*, 975 So. 2d at 573 & n.1. Because Wingard cannot return to the First DCA to exhaust this claim, the claim is procedurally defaulted.  *See Babichev*, 2021 WL 6135192, at *9–10 & n.7.  Further, Wingard has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the default.  Therefore, Ground Eight is denied as procedurally barred.

### **Ground Nine**

In Ground Nine, Wingard states:

Sub Claim "C"
The Trial Court erred when it denied Wingard['s] Motion to Dismiss Charges contain[ed] in the [I]nformation which lacked Subject Matter Jurisdiction[.]

Supporting Facts:
The trial court classified the video interview as a colloquy and the statements made were considered to be sworn testimony made under oath by a material witness Chloe Smith and the C.P.T. workers.  This was a pure violation of Fla. R. Crim. P. 3.140(g) and the Trial Court failed to properly apply the [l]aw of the rule to this [illegible] Smith was asked during the video "if she understood a

truthful statement from a lie" and the above classification of the statement was made by the Trial Court.

The court appointed counsel took no action rendering counsel ineffective at this stage of the criminal [p]rocedures.

Doc. 1 at 28.

To the extent this claim overlaps with Ground Three in the Petition, it is denied for the reasons stated in Ground Three.  Also, to the extent Wingard contends that his counsel was ineffective for failing to object to the trial court's acceptance of testimony from Chloe Smith and the C.P.T. workers pursuant to Rule 3.140(g), Wingard did not present such claim in his Amended Motion for Post-Conviction Relief.   Resp. Ex. Q1 at 123–48.   Because this claim was presented for the first time in this Court, it is unexhausted and procedurally defaulted.

Further, Wingard has not shown cause and prejudice, or any factor warranting the application of the fundamental miscarriage of justice exception to overcome the default.  Notably, Wingard has not shown that his underlying ineffective assistance of counsel claim is a substantial one to overcome the default. *See Martinez*, 566 U.S. at 16 (stating that a claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support").  Contrary to Wingard's claim, the transcripts of the hearings on his motions to dismiss on January 31, 2012, March 15, 2012, and September 14, 2012, show that his

40

counsel did in fact argue that the child's statements in the CPT video were unsworn and the child did not qualify as a material witness under Rule 3.140(g).  Resp. Ex. A at 89–90, 93–94; Resp. Ex. C at 72–73, 112–13.  Because Wingard's counsel actually raised this argument, Wingard's claim to the contrary is not substantial.  *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014).  Therefore, Ground Nine is denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this action with prejudice and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.[9]  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

---

[9] The court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of September, 2024.

_____
BRIAN J. DAVIS
United States District Judge

Jax-11 8/30
c:
Louis Alexander Wingard, #099352
Counsel of Record

42